UNITED STATES DISTRICT COURT FOR THE
MIDDLE DISTRICT OF PENNSYLVANIA

STUART S. STREETER,      :
                         :
        Plaintiff        :  No. 3:12-CV-267
                         :
        v.               :
                         :
CAROLYN W. COLVIN,       :
ACTING COMMISSIONER OF   :  (Judge Nealon)
SOCIAL SECURITY,         :
                         :
        Defendant        :

FILED
SCRANTON
OCT 3 1 2013
PER _____
DEPUTY CLERK

## MEMORANDUM

The above-captioned action is one seeking review of a decision of the Commissioner of Social Security ("Commissioner") denying Plaintiff Stuart S. Streeter's claim for social security disability insurance benefits and supplemental security income benefits.

On November 14, 2008, Streeter protectively filed[1] an application for disability insurance benefits and an application for supplemental security income benefits alleging disability since October 10, 2007 due to obesity, diabetes, cancer with the loss of a kidney, and resultant impairments. (Tr. 32, 110-12, 115-16). On March 6, 2009, the Bureau of Disability Determination denied Streeter's applications. (Tr. 85, 88-95). On May 6, 2009, Streeter requested a hearing before an administrative law judge ("ALJ"). (Tr. 98-99). An ALJ hearing was held on April 14, 2010. (Tr. 46-65). On May 21, 2010, the ALJ issued a decision denying Streeter's applications. (Tr. 29-42). On June 30, 2010, Streeter requested that the Appeals Council review the ALJ's decision. (Tr. 14). The Appeals Council on December 12,

---

1. Protective filing is a term for the first time an individual contacts the Social Security Administration to file a claim for benefits. A protective filing date allows an individual to have an earlier application date than the date the application is actually signed.

2011, concluded that there was no basis upon which to grant Streeter's request for review. (Tr. 1-5). Thus, the ALJ's decision stood as the final decision of the Commissioner.

Streeter then filed a complaint in this Court on February 10, 2012. (Doc. 1). Supporting and opposing briefs were submitted and the appeal is now ripe for disposition. (Docs. 11, 12). For the reasons set forth below, the decision of the Commissioner denying Streeter's applications for disability insurance benefits and supplemental security income benefits will be affirmed.

Disability insurance benefits are paid to an individual if that individual is disabled and "insured," that is, the individual has worked long enough and paid social security taxes. The last date that a claimant meets the requirements of being insured is commonly referred to as the "date last insured." Streeter meets the insured status requirements of the Social Security Act through March 31, 2012. (Tr. 34).

Supplemental security income (SSI) is a federal income supplement program funded by general tax revenues (not social security taxes). It is designed to help aged, blind or other disabled individuals who have little or no income.

Streeter was born on August 1, 1977 and is considered a "younger individual"[2] whose age generally would not seriously impact his ability to adjust to other work. 20 C.F.R. §§ 404.1563(c) and 416.963(c). (Tr. 51, 110, 115). Streeter has a high school education. (Tr. 52). He worked as a janitor, laborer, and long haul truck driver. (Tr. 158). He has not engaged in substantial gainful activity since 2007. (Tr. 34, 126-33).

---

2. The Social Security regulations state that "[t]he term younger individual is used to denote an individual 18 through 49." 20 C.F.R., Part 404, Subpart P, Appendix 2, § 201(h)(1).

2

**Standard of Review**

When considering a social security appeal, the court has plenary review of all legal issues decided by the Commissioner. See Poulos v. Commissioner of Social Security, 474 F.3d 88, 91 (3d Cir. 2007); Schaudeck v. Commissioner of Social Sec. Admin., 181 F.3d 429, 431 (3d Cir. 1999); Krysztoforski v. Chater, 55 F.3d 857, 858 (3d Cir. 1995). However, the court's review of the Commissioner's findings of fact pursuant to 42 U.S.C. § 405(g) is to determine whether those findings are supported by "substantial evidence." Id.; Mason v. Shalala, 994 F.2d 1058, 1064 (3d Cir. 1993); Brown v. Bowen, 845 F.2d 1211, 1213 (3d Cir. 1988). Factual findings which are supported by substantial evidence must be upheld. 42 U.S.C. §405(g); Fargnoli v. Massanari, 247 F.3d 34, 38 (3d Cir. 2001) ("Where the ALJ's findings of fact are supported by substantial evidence, we are bound by those findings, even if we would have decided the factual inquiry differently."); Cotter v. Harris, 642 F.2d 700, 704 (3d Cir. 1981) ("Findings of fact by the Secretary must be accepted as conclusive by a reviewing court if supported by substantial evidence.").

Substantial evidence "does not mean a large or considerable amount of evidence, but 'rather such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" Pierce v. Underwood, 487 U.S. 552, 565 (1988) (quoting Consolidated Edison Co. v. N.L.R.B., 305 U.S. 197, 229 (1938)); Johnson v. Commissioner of Social Security, 529 F.3d 198, 200 (3d Cir. 2008); Hartranft v. Apfel, 181 F.3d 358, 360 (3d Cir. 1999). Substantial evidence has been described as more than a mere scintilla of evidence but less than a preponderance. Brown, 845 F.2d at 1213. In an adequately developed factual record, substantial evidence may be "something less than the weight of the evidence, and the

3

possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's finding from being supported by substantial evidence." Consolo v. Federal Maritime Commission, 383 U.S. 607, 620 (1966).

Substantial evidence exists only "in relationship to all the other evidence in the record," Cotter, 642 F.2d at 706, and "must take into account whatever in the record fairly detracts from its weight." Universal Camera Corp. v. N.L.R.B., 340 U.S. 474, 488 (1971). A single piece of evidence is not substantial evidence if the Commissioner ignores countervailing evidence or fails to resolve a conflict created by the evidence. Mason, 994 F.2d at 1064. The Commissioner must indicate which evidence was accepted, which evidence was rejected, and the reasons for rejecting certain evidence. Johnson, 529 F.3d at 203; Cotter, 642 F.2d at 706-07. Therefore, a court reviewing the decision of the Commissioner must scrutinize the record as a whole. Smith v. Califano, 637 F.2d 968, 970 (3d Cir. 1981); Dobrowolsky v. Califano, 606 F.2d 403, 407 (3d Cir. 1979).

**Sequential Evaluation Process**

To receive disability benefits, the plaintiff must demonstrate an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 432(d)(1)(A). Furthermore,

> [a]n individual shall be determined to be under a disability only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the

4

> immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work. For purposes of the preceding sentence (with respect to any individual), "work which exists in the national economy" means work which exists in significant numbers either in the region where such individual lives or in several regions of the country.

42 U.S.C. § 423(d)(2)(A).

The Commissioner uses a five-step process in evaluating disability insurance and supplemental security income claims. See 20 C.F.R. § 404.1520 and 20 C.F.R. § 416.920; Poulos, 474 F.3d at 91-92. This process requires the Commissioner to consider whether a claimant (1) is engaging in substantial gainful activity, (2) has an impairment that is severe or a combination of impairments that is severe, (3) has an impairment or combination of impairments that meets or equals the requirements of a listed impairment, (4) has the residual functional capacity to return to his or her past work, and (5) if not, whether he or she can perform other work in the national economy. Id. As part of step four, the administrative law judge must determine the claimant's residual functional capacity. Id. If the claimant has the residual functional capacity to do his or her past relevant work, the claimant is not disabled.

Residual functional capacity is the individual's maximum remaining ability to do sustained work activities in an ordinary work setting on a regular and continuing basis. See Social Security Ruling 96-8p, 61 Fed. Reg. 34475 (July 2, 1996). A regular and continuing basis contemplates full-time employment and is defined as eight hours a day, five days per week or other similar schedule. The residual functional capacity assessment must include a discussion of the individual's abilities. Id.; 20 C.F.R. §§ 404.1545 and 416.945; Hartranft, 181 F.3d at 359 n.1 ("'Residual functional capacity' is defined as that which an individual is still able to do despite the limitations caused by his or her impairment(s).").

**Discussion**

The ALJ proceeded through each step of the sequential evaluation process and determined that Streeter was not disabled. (Tr. 32-42). At step one, the ALJ found that Streeter had not engaged in substantial gainful work activity since October 10, 2007, the alleged onset date.[3] (Tr. 34).

At step two, the ALJ found that Streeter suffered from the severe impairments of depression, diabetes, status post left kidney removal and obesity.[4] (Tr. 34-35).

At step three of the sequential evaluation process, the ALJ found that Streeter did not have an impairment or combination of impairments that met or medically equaled a listed impairment. (Tr. 35-37).

At step four of the sequential evaluation process, the ALJ determined that Streeter had the residual functional capacity to perform a range of light work, with occasional bending, stooping, and crouching; no climbing, kneeling or crawling; no exposure to unprotected heights or moving machinery; limited to simple, repetitive tasks with no contact with the general public and only occasional contact with supervisors and co-workers. (Tr. 37). The

---

3. The ALJ noted that Streeter worked after the alleged disability onset date, however such work was an unsuccessful work attempt. (Tr. 34). Substantial gainful activity is work that "[i]nvolves doing significant and productive physical or mental duties" and "[i]s done (or intended) for pay or profit." 20 C.F.R. § 404.1510 and 20 C.F.R. § 416.910.

4. An impairment is "severe" if it significantly limits an individual's ability to perform basic work activities. 20 C.F.R. § 404.921. Basic work activities are the abilities and aptitudes necessary to do most jobs, such as walking, standing, sitting, lifting, pushing, seeing, hearing, speaking, and remembering. Id. An impairment or combination of impairments is "not severe" when medical and other evidence establish only a slight abnormality or a combination of slight abnormalities that would have no more than a minimal effect on an individual's ability to work. 20 C.F.R. § 416.921; Social Security Rulings 85-28, 96-3p and 96-4p.

ALJ then found that Streeter is unable to perform any of his past relevant work. (Tr. 40-41).

At step five, the ALJ determined that there are a significant number of jobs in the national economy that Streeter could perform. (Tr. 41-42). At the hearing, the vocational expert testified that Streeter would be capable of performing work as an inspector, assembler, and packer. (Tr. 41, 61-64). Streeter was therefore found to be not disabled under the Act from October 10, 2007, through the date of the ALJ's decision. (Tr. 42).

In his appeal brief, Streeter argues that the ALJ erred by failing to assist him in developing the record and exhibited bias against him; and, erred by rejecting the opinions of Dr. Cama, Dr. Nazar, and Dr. Venturanza. (Doc. 11, pgs. 13-24).

*Developing the Record*

The Commissioner must adequately develop a full and fair record. Rutherford v. Barnhart, 399 F.3d 546, 557 (3d Cir. 2005); Ventura v. Shalala, 55 F.3d 900, 902 (3d Cir. 1995). However, "this duty is most acute where the claimant is unrepresented", and Streeter was indeed represented by counsel. Turby v. Barnhart, 54 Fed. Appx. 118, 122 (3d Cir. 2002).

The Social Security regulations require that an applicant for disability benefits come forward with medical evidence "showing that [the applicant] has an impairment(s) and how severe it is during the time [the applicant] say[s] [he or she is] disabled" and "showing how [the] impairment(s) affects [the applicant's] functioning during the time [the applicant] say[s] [he or she is] disabled." 20 C.F.R. §§ 404.1512(c) and 416.912(c). Streeter was represented by counsel at the ALJ hearing and counsel was specifically asked if there was any further evidence that needed to be submitted. (Tr. 48). Counsel responded that there were hospital records sent to the SSA the previous day. (Tr. 48-49). Counsel provided a copy of those

records to the ALJ and they were admitted into evidence. (Tr. 48-49). At the conclusion of the hearing, Streeter was asked if there was any further evidence that needed to be discussed. (Tr. 64). Streeter responded that there was none. (Tr. 64).

Streeter argues that the ALJ erred by failing to consult with medical examiners and by not sending interrogatories to Dr. Cama. (Doc. 11, pgs. 16-17). However, the regulations provide discretion in determining whether to obtain a consultative examination or to recontact a treating source, the language of the regulations is permissive, not mandatory. See 20 C.F.R. § 416.919a(b) ("Situations that may require a consultative examination"); 20 C.F.R. §§ 404.1520b(c)(1), 416.920b(c)(1) (recontacting a medical source is permissive). The regulations state that the Commissioner "*may* also ask for and consider opinions from medical experts on the nature and severity of [] [the claimant's] impairment(s) and on whether [] [the] impairment(s) equals the requirements of any impairment listed in appendix 1 to [] subpart [P]." 20 C.F.R. §§ 404.1527(e)(2)(iii), 416.927(e)(2)(iii) (emphasis added). And, the Commissioner "*may* recontact [] [the] treating physician, psychologist, or other medical source." 20 C.F.R. §§ 404.1520b(c)(1), 416.920b(c)(1) (emphasis added). The ALJ sufficiently developed the record, there is no evidence of prejudice, and the burden was on Streeter to present evidence establishing disability.

### *Treating Physicians' Opinions*

An ALJ must accord treating physicians' reports great weight, especially "when their opinions reflect expert judgment based on a continuing observation of the patient's condition over a prolonged period of time." Plummer, 186 F.3d at 429 (quoting Rocco v. Heckler, 826 F.2d 1348, 1350 (3d Cir. 1987)). However, while treating physicians' opinions may be given

8

more weight, there must be relevant evidence to support the opinion. 20 C.F.R. § 404.1527(d). Automatic adoption of the opinion of the treating physician is not required. See Jones v. Sullivan, 954 F.2d 125, 129 (3d Cir. 1991). "[W]hen faced with conflicting medical records the ALJ is not under a mandate to accept the opinion of the treating physician as the final and only determination." Drejka v. Commissioner of Social Security, 61 Fed. Appx. 778, 782 (3d Cir. 2003).

Streeter argues that the ALJ failed to properly consider the opinions of Dr. Cama, Dr. Nazar, and Dr. Venturanza. (Doc. 11, pgs. 17-22). The Commissioner argues that the ALJ properly evaluated the opinions of the treating physicians. (Doc. 12, pgs. 6-13).

Streeter began treating with Dr. Cama in 2004. (Tr. 193-201). Streeter treated with Dr. Cama on May 4, 2004 for a periumbilical hernia. (Tr. 201).

In December 2006, Streeter treated with Dr. Cama for a fractured ankle. (Tr. 201). Dr. Cama referred Streeter to Dr. Nazar and renewed his prescription for Percocet. (Tr. 201).

In December 2007 and January 2008, Streeter complained to Dr. Cama of fatigue. (Tr. 19). Dr. Cama referred Streeter to Dr. Felix Desio, a nephrologist. (Tr. 172-73, 200). Dr. Desio examined Streeter and stated that his trouble sleeping could be due to ringworm, his fatigue may be from his insomnia and he may have, or may be developing, sleep apnea. (Tr. 172-73). Dr. Desio did not believe there was any renal problem. (Tr. 173).

On January 22, 2008, Dr. Cama completed an Employability Assessment Form and determined that Streeter was temporarily disabled for a period of twelve months or more, beginning on January 22, 2008 and expected to last until January 22, 2009. (Tr. 171).

In February 2008, Dr. Cama examined Streeter and assessed hypothyroid, renal cell

9

carcinoma and removal of kidney. (Tr. 21, 199). He advised Streeter to lose weight and stop smoking. (Tr. 199). In March 2008, Dr. Cama again diagnosed hypothyroid and periumbilical hernia and he noted that Streeter lost weight. (Tr. 199). In April 2008, Dr. Cama noted that Streeter hypothyroidism was "doing well." (Tr. 199). Dr. Cama noted in November 2008 that Streeter stopped taking his thyroid medication for unknown reasons. (Tr. 198). Streeter had an ultrasound of his thyroid gland on November 18, 2008 which revealed that the thyroid was normal in size and configuration. (Tr. 178). There was a cyst in the right lobe centrally, the left lobe was unremarkable, there was no goiter, and the left submandibular lymph node was enlarged. (Tr. 178).

On April 13, 2009, Dr. Cama noted that Streeter had new-onset diabetes. (Tr. 19, 200). On April 27, 2009, Dr. Cama stated that Streeter's diabetes was "doing well." (Tr. 197).

On April 27, 2009, Dr. Cama completed another Employability Assessment Form and determined that Streeter was "permanently disabled." (Tr. 124-25). Dr. Cama diagnosed diabetes mellitus and nephroblastoma (kidney cancer) and based his assessment on physical examination. (Tr. 124-25). He also noted that Streeter required insulin and could not work in any capacity without this medication because he is a severe diabetic. (Tr. 125).

On May 12, 2009, Streeter reported that he felt good and Dr. Cama noted that his diabetes were "under much better control." (Tr. 197). In June 2009, Streeter reported that he was maintaining his sugar levels very carefully, he felt good, and he did not have appropriate followup after his kidney removal. (Tr. 196).

In September, October and November, 2009, Dr. Cama's notes indicated that

sometimes Streeter's diabetes was under control, but other times Streeter was noncompliant with his medications and his diabetes was not well controlled. (Tr. 194-95).

Dr. Cama noted in March and April, 2010 that Streeter was depressed and he changed his anti-depressant medication. (Tr. 27, 193).

In July and September, 2010, Dr. Cama noted that Streeter did not properly take insulin for his diabetes and he was noncompliant with his medication. (Tr. 12-13). Dr. Cama warned Streeter that it is important to take his insulin. (Tr. 13).

The ALJ considered Dr. Cama's opinion that Streeter was "permanently disabled" but found that it lacked credibility because it was inconsistent with other evidence of record, including Dr. Cama's own medical records. (Tr. 37-40). See Adorno, 40 F.3d at 47-48 (concluding that a statement by a treating physician supporting an assertion that the claimant is "disabled" or "unable to work" is not dispositive of the issue); see also 20 C.F.R. § 416.927(d)(2) (allowing treating physician's opinion to be discounted where that opinion is inconsistent with other substantial evidence in the record). The ALJ throughly reviewed and examined Dr. Cama's treatment notes and weighed his opinion against the other evidence of record. (Tr. 37-40).

The ALJ evaluated Streeter's impairments pursuant to the listings. 20 C.F.R. Pt. 404, Subpart P, App. 1. Pursuant to listing 6.00 et seq. (Genitourinary Impairments), the ALJ determined that Streeter's renal impairment did not meet the listing requirements, noting that the records reveal that Streeter's kidney is functioning properly. (Tr. 35). The ALJ evaluated Streeter's diabetes mellitus pursuant to listing 9.08 and determined that he did not meet the listing requirements. (Tr. 35). The ALJ found that there was no neuropathy demonstrated by

11

significant disorganization of motor function in two extremities resulting in sustained disturbance of gross and dexterous movements, or gait and station. (Tr. 35). 20 C.F.R. Pt. 404, Subpart P, App. 1. The ALJ also found that there was no evidence of acidosis or retinitis proliferans. (Tr. 35). 20 C.F.R. Pt. 404, Subpart P, App. 1.

After review, this Court finds that substantial evidence supports the ALJ's evaluation of Dr. Cama's opinion. The ALJ was acting within his authority in determining that Dr. Cama's treatment notes do not support a finding of disability.

Streeter also argues that the ALJ failed to properly consider the opinion of psychiatrist Dr. Lucille Venturanza. (Doc. 20, pgs. 20-21). Specifically, the ALJ erred by failing to consider the Global Assessment of Functioning ("GAF") score of 46[5] assessed by Dr. Venturanza. (Doc. 11, pgs. 20-21). The Government argues that Dr. Venturanza's one-time assessment does not equate to a medical opinion that Streeter was unable to work. (Doc. 12, pg. 11).

Streeter treated at Norther Tier Counseling with psychiatrist Dr. Lucille Venturanza. (Tr. 187-92, 243-48). In October 2009, Dr. Venturanza examined Streeter and diagnosed mood disorder, NOS, shown by depression, sleep and appetite disturbance, feeling helpless, anhedonia, lack of motivation, anxiety (sweats, racing heart, and nausea), and anger (yelling, throwing things, and insulting). (Tr. 187). She also assessed a GAF score of 46. (Tr. 187, 243). In February 2010, Streeter again treated at Northern Tier Counseling and was diagnosed with mood disorder and a GAF score of 50 was assessed. (Tr. 248).

---

5. A GAF score of 41-50 indicates "[s]erious symptoms OR any serious impairment in social, occupational, or school functioning." Diagnostic and Statistical Manual of Mental Disorders, 4th edition, Text Revision (2000).

In Rios v. Commissioner of Social Security, the Third Circuit Court of Appeals agreed with the District Court's determination that "the ALJ's omission of the psychiatrists' GAF scores does not warrant remand." Rios, 444 Fed. Appx. 532, 535 (3d Cir. 2011). The claimant in Rios argued that the ALJ's decision was not supported by substantial evidence because she failed to discuss two GAF scores of 50, and instead only addressed the GAF score of 50-55 assessed by the consultative examiner. See Rios, 444 Fed. Appx. at 534. The Third Circuit Court stated that "GAF scores do not have a 'direct correlation to the severity requirements' of the Social Security mental disorder listings.... They are only medical evidence that informs the Commissioner's judgment of whether an individual is disabled." Rios, 444 Fed. Appx. at 535 (citing Watson v. Astrue, 2009 WL 678717, *5 (E.D. Pa. March 13, 2009)). The Rios Court determined that the claimant would have to meet the requirements of the listings to have a severe affective disorder. Rios, 444 Fed. Appx. at 535.

In the present matter, the ALJ discussed Streeter's treatment records from Northern Tier Counseling and evaluated his alleged mental impairments. (Tr. 35-36, 39-40). The ALJ determined that Streeter did not meet Listing 12.04. (Tr. 35-36, 39-40). Pursuant to the "B" criteria of the Listings, the ALJ determined that Streeter had only mild limitations in activities of daily living, moderate limitations in maintaining social functioning, moderate limitations in maintaining concentration, persistence or pace, and no episodes of decompensation. (Tr. 35-36); 20 C.F.R. Pt. 404, Subpart P, App. 1. The ALJ noted that Streeter drives, takes care of his dog, does household chores, and cuts the grass; however, sometimes he cannot complete household chores due to fatigue. (Tr. 36, 56-61). Streeter goes to stores with encouragement from his girlfriend, he has no friends, and is able to attend social functions with his parents.

(Tr. 36, 56-61). The ALJ also noted that during the hearing, Streeter was focused and responsive to questioning. (Tr. 36).

Pursuant to the "C" criteria of the Listings, the ALJ determined that there were no repeated episodes of decompensation, each of extended duration; there was no evidence of a residual disease process that has resulted in such marginal adjustment that even a minimal increase in mental demands or change in the environment would be predicted to cause the individual to decompensate; and, no current history of one or more years' inability to function outside a highly supportive living arrangement, with an indication of continued need for such an arrangement. (Tr. 36-37); 20 C.F.R. Pt. 404, Subpart P, App. 1. Thus, the ALJ determined that Streeter's alleged mental impairments were not severe. (Tr. 35-37). The ALJ nevertheless accounted for Streeter's alleged mental limitations in the residual functional capacity assessment. (Tr. 37-38). The ALJ determined that Streeter would only be able to perform simple, repetitive tasks with no contact with the general public and only occasional contact with supervisors and co-workers. (Tr. 37). Substantial evidence supports the ALJ's evaluation of Streeter's alleged mental impairments.

Streeter treated with Dr. Jose Nazar, an orthopaedic surgeon, in 2006. (Tr. 249-61). In December 2006, Dr. Nazar treated Streeter for a left ankle fracture due to a fall. (Tr. 250). Streeter underwent surgery and had screws placed in his ankle. (Tr. 250-51). Dr. Nazar advised Streeter that he would probably need to be out of work for eight (8) to twelve (12) weeks. (Tr. 251). Dr. Nazar continued to treat Streeter for his ankle and noted that he was doing better and healing well. (Tr. 252-53).

After the ALJ's decision, Dr. Nazar rendered two opinions regarding Streeter's

14

disabilities. In October 2010, five (5) months after the ALJ's decision, Dr. Nazar stated that Streeter "will be, over time, a candidate for disability due to the fact that he has multiple medical problems and arthritis in his ankle." (Tr. 254). Dr. Nazar also noted that Streeter would continue to see Dr. Cama for his diabetes and to pursue disability. (Tr. 254). On March 28, 2011, ten (10) months after the ALJ's decision, Dr. Nazar stated that Streeter was "fully incapacitated to do any kind of work especially long time sitting, long time standing and repetitive bending." (Tr. 255). Dr. Nazar recommended that Streeter inquire about applying for disability. (Tr. 255). Streeter argues that the ALJ failed to address this statement from Dr. Nazar. (Doc. 11, pg. 21). However, this evidence was not submitted to the ALJ and therefore was not even available for his review. As the Government states, although some of these records apply to the relevant time period, they were not submitted until after the ALJ's decision of May 21, 2010. (Doc. 12, pgs. 8-9; Tr. 29-42).

Evidence submitted after the ALJ's decision cannot be used to argue that the administrative law judge's decision is not supported by substantial evidence. Matthews v. Apfel, 239 F.3d 589, 594-95 (3d Cir. 2001). Such evidence can be considered to determine whether it provides a basis for remand under sentence 6 of section 405(g), 42 U.S.C. Szubak v. Secretary of Health and Human Servs., 745 F.2d 831, 833 (3d Cir. 1984). Under sentence 6 of section 405(g), the evidence must be "new" and "material" and a claimant must show "good cause" for not having incorporated the evidence into the administrative record. Id. The Court of Appeals for the Third Circuit explained that to be material "the new evidence [must] relate to the time period for which benefits were denied, and that it not concern evidence of a later-acquired disability or of the subsequent deterioration of the previously non-disabling

condition." Id. In the present case, the additional evidence that Streeter submitted after the ALJ's decision is new and material because it relates to the relevant time period and does not refer to a later-acquired disability. The treatment notes relate to Streeter's ankle fracture and treatment post kidney resection and treatment for kidney cancer. (Tr. 255). However, Streeter has not shown "good cause" for failing to make this evidence part of the administrative record. As stated above, Streeter began treating with Dr. Nazar in 2006 and therefore had ample time to obtain and present evidence.

Streeter also argues that he is entitled to remand pursuant to Shedden v. Astrue, 2012 WL 760632 (M.D. Pa. March 7, 2010). (Doc. 11, pgs. 18-20). However, the Shedden case is distinguishable from the matter sub judice.

In Shedden, the District Court found that the ALJ erred in rejecting the treating physician's opinion. Shedden, 2012 WL 760632. The Court stated that the ALJ relied on his "lay analysis" of the medical records and his assessment of Shedden's credibility and activities of daily living. Shedden, 2012 WL 760632, *10. The Court also stated that the ALJ placed great weight on the Residual Functional Capacity Assessment form completed by a non-medical state agency disability adjudicator. Shedden, 2012 WL 760632, *10. Such forms completed by a non-medical state agency disability adjudicator are not to be accorded any evidentiary weight by ALJs. Shedden, 2012 WL 760632, *10-11.

The ALJ discounted the treating physician's opinion, stating that the doctor had an "altruistic and financial interest in aiding" the claimant. Shedden, 2012 WL 760632, *10. The Court determined that this statement was "pure speculation and not supported by any evidence in the record." Shedden, 2012 WL 760632, *10. Additionally, the Shedden Court

16

determined that the ALJ should have further developed the record because the treating physician's notes were illegible. Shedden, 2012 WL 760632, *12. Thus, the Court in Shedden found that the Commissioner's decision was not supported by substantial evidence for reasons other than those presently before this Court.

**Conclusion**

Review of the administrative record reveals that the decision of the Commissioner is supported by substantial evidence. Therefore, the decision of the Commissioner will be affirmed. An appropriate order follows.

**Date:** October 31, 2013

**United States District Judge**